UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GARY JET CENTER, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:15-cv-368-JVB-JEM ) ) |
| AFCO AvPORTS MANAGEMENT, LLC, *et al.*, | ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Gary Jet Center, Inc., sued Defendant AFCO AvPorts Management, LLC, Defendant Gary/Chicago International Airport Authority, and five members of its board in a six-count Complaint.

Count I purports to assert a claim for "Violation of Contract Clause and 42 U.S.C. § 1983." (Compl., Count I, DE 1, ¶¶ 124–132.) The parties agree Count I—the allegation that Defendants violated the Contracts Clause of the United States Constitution—is the sole basis for federal jurisdiction.

The remaining Counts sound in state law.[1] Count II seeks declaratory relief under the law of the State of Indiana. (*Id.*, Count II, ¶¶ 133–137.) Count III claims a breach of contract (*Id.*, Count III, ¶¶ 138–144) and Count IV claims an intentional interference with a contractual relationship (*Id.*, Count IV, ¶¶ 145–151). Count V seeks injunctive relief (*Id.*, Count V, ¶¶ 152–154) and Count VI seeks attorney's fees and costs (*Id.*, Count VI, ¶¶ 155–156).

---

[1] The only exceptions are that Count V seeks injunctive relief arguably based in part on Count I, and Count VI includes a request for attorney's fees in part pursuant to 42 U.S.C. § 1983, on the basis of Count I. Neither Count V nor Count VI, however, provide a basis for federal jurisdiction independent of Count I. In other words, if Count I falls, any federal features of Counts V and VI must also fall.

Defendants Airport Authority and its board members moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, DE 18.) The Court held a hearing on December 8, 2015, regarding the Motion to Dismiss. All parties appeared by counsel.

For the following reasons, the Court grants the Motion to Dismiss as to the impairment of contract claim, and will dismiss this claim without prejudice.

A.   **Summary of Facts**

The Court accepts the allegations in the Complaint as true, as required at this procedural stage. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Plaintiff Gary Jet is a Fixed Base Operator (FBO) at the Gary/Chicago International Airport (Gary Airport). (Compl., DE 1, ¶ 18.) Gary Jet provides aeronautical services at the Gary Airport. (*Id.* ¶ 21.) Gary Jet began operating at the Gary Airport after entering into a lease with the Airport Authority on December 9, 1991 ("Original Lease"). (*Id.* ¶ 37.)

Defendant Airport Authority is a municipal corporation under Indiana law that owns and operates the Gary Airport. (*Id.* ¶ 27.) Defendants Mays, Dillard, Pritchett, Cooper, and Irving are members of the Airport Authority's board. (*Id.* ¶ 29.)

Fixed Base Operator Rules and Regulations ("FBO Rules," also known as "Minimum Standards") govern FBOs at the Gary Airport. (*Id.* ¶ 48.) When Gary Jet and the Airport Authority began negotiating a lease extension in the fall of 2006, the FBO Rules in place contained a 1.5% charge on gross revenue. (*Id.* ¶ 48.) These FBO Rules stated that the Airport Authority "intend[ed] to enforce" the 1.5% provision "for all commercial FBO services on the airport on or after" January 1, 2001, "pending the expiration of existing leases which do not incorporate these terms." (*Id.* ¶ 48, quoting FBO Rules, Ex. B to Compl., DE 1-2, ¶ 7(i).)

2

Gary Jet's Original Lease, however, did not contain the provision requiring a 1.5% payment on gross revenue set forth in the FBO Rules, and the Airport Authority had never attempted to collect such a payment from Gary Jet at any time before the negotiations in the fall of 2006 for a lease extension. (*Id.* ¶ 50.) During these negotiations, Gary Jet objected to the 1.5% provision, and the parties eventually agreed that Gary Jet would pay "Supplemental Rent" (10% of all fuel flowage, parking, and landing fees that Gary Jet remitted to the Authority each year) instead of 1.5% of Gary Jet's gross revenues. (*Id.* ¶¶ 51–57.)

Gary Jet and the Airport Authority entered a First Amended Lease Agreement on January 1, 2007 ("2007 Lease"). (*Id.* ¶¶ 5, 57.) The 2007 Lease states that its term is 39 years, ending on December 31, 2045. (2007 Lease, Ex. C to Compl., DE 1-3, Art. IV, § A.)

The 2007 Lease requires Gary Jet to pay to the Airport Authority "Base Rent" and "Supplemental Rent," which equals "ten [ ] percent of the amount of all Fuel Flowage Fees, Landing Fees and Parking Fees it collects as provided for herein." (*Id.* Art. V, §§ A, B.)

The 2007 Lease states that Gary Jet "shall abide by the provisions" of the FBO Rules and Regulations, as amended by the Airport Authority from time to time, except when those provisions expressly contravene the provisions of the 2007 Lease. (*Id.* Art. I, § B.) In other words, in the event of a conflict between the 2007 Lease and the FBO Rules and Regulations as amended, the 2007 Lease controlled. The parties also agreed that the FBO Rules and Regulations "shall be a part of and be made applicable to" any subsequent FBO lease agreement entered into by the Airport Authority. (*Id.* Art. I, § B.)

Gary Jet never paid a 1.5% charge to the Airport Authority, and the Airport Authority never attempted to collect such a charge from Gary Jet. (*Id.* ¶¶ 50, 62.)

3

Gary Jet later claimed the Airport Authority illegally favored a different FBO at the Gary Airport. Gary Jet sued the Airport Authority (and other defendants) on this basis on December 9, 2013. *Gary Jet Center v. Gary/Chicago International Airport Authority, et al.*, No. 2:13-CV-453 (N.D. Ind. Dec. 9, 2013). The parties settled, and entered into a Settlement and Mutual Release Agreement ("2014 Settlement Agreement") effective August 7, 2014. (Compl., DE 1, ¶ 93; 2014 Settlement Agreement, Ex. D to Compl., DE 1-4.)

In the 2014 Settlement Agreement, Gary Jet agreed to work in good faith with the Airport Authority to develop revised minimum standards ("New Minimum Standards") for FBOs at the Gary Airport. (2014 Settlement Agreement, Ex. D to Compl., DE 1-4, ¶ 3(B).) The parties also agreed that in the event of a conflict between Gary Jet's lease and the New Minimum Standards, the New Minimum Standards will control. (*Id.* ¶ 3(B).) In the instant case, Gary Jet claims the 2014 Settlement Agreement also includes a term by which the Airport Authority agreed to waive the 1.5% provision in the FBO Rules. (Compl., DE 1, ¶ 96.)

Around the same time as the 2014 Settlement Agreement, Gary Jet and the Airport Authority entered into the First Amendment to First Amended Lease Agreement ("2014 Amended Lease") on July 28, 2014. (2014 Amended Lease, Ex. E to Compl., DE 1-5.) The 2014 Amended Lease only changed the 2007 Lease in one way. The parties replaced Article I, section B, of the 2007 Lease with a new provision that included the following terms:

> [Gary Jet] shall abide by the provisions of the Minimum Standards, as amended by the [Airport Authority] from time to time. In the event of a conflict between the terms of this Lease and the terms of the Minimum Standards, the Minimum Standards will control. [The Airport Authority] covenants and agrees with [Gary Jet] that [the Airport Authority's] Minimum Standards shall be a part of and be made applicable to any subsequent Fixed Base Operator lease agreement entered into by the [Airport Authority].

4

(*Id.* Art. A-1.) In other words, the parties agreed that the Minimum Standards now control over the Lease.

Gary Jet executed the 2014 Amended Lease and the 2014 Settlement Agreement at the same time. (Compl., DE 1, ¶ 97(c).)

Consistent with the 2014 Settlement Agreement, the Airport Authority sent Gary Jet a draft of the New Minimum Standards on December 5, 2014. (*Id.* ¶ 100.) This draft did not include any provision requiring Gary Jet to pay the Airport Authority a percentage of gross revenue. (*Id.* ¶ 101.) Gary Jet helped the Airport Authority revise the New Minimum Standards, and the parties exchanged several more drafts. (*Id.* ¶¶ 102–103.)

On May 7, 2015, the Airport Authority informed Gary Jet that the Airport Authority intended to include in the New Minimum Standards a requirement that each airport business pay the Airport Authority a percentage of their gross revenues. (*Id.* ¶ 104.) Gary Jet objected. (*Id.* ¶¶ 106, 109.)

The Airport Authority approved the New Minimum Standards at the September 14, 2015, board meeting. (*Id.* ¶ 121.) Gary Jet claims these New Minimum Standards "flip [the 2007 Lease] on its head" (*Id.* ¶ 115) in the following ways: they require Gary Jet to pay the Airport Authority 1.5% of Gary Jet's gross revenues, raise Gary Jet's rent from $.43 per square foot to $.50 per square foot, require Gary Jet to pay to maintain the fuel farm, and require Gary Jet to disclose its confidential business information concerning revenues to the Airport Authority. (*Id.* ¶¶ 116–120.)

Gary Jet claims the New Minimum Standards violate the Contracts Clause of the United States Constitution by impairing the obligations of the 2007 Lease. (*Id.*, Count I, ¶¶ 124–132.) Gary Jet also claims the New Minimum Standards exceed the Airport Authority's power under

5

Indiana law (*Id.*, Count II, ¶¶ 133–137) and effectuate a breach of the 2014 Settlement Agreement (*Id.*, Count III, ¶¶ 138–144).

Gary Jet did not bring a claim for breach of the 2007 Lease in this suit, nor did Gary Jet bring a claim for unconstitutional impairment of the 2014 Settlement Agreement in this suit.

**B.  Discussion**

**(1)  Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))[2].

As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for

---

[2] In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 570). The Seventh Circuit synthesized the standard into three requirements:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

**(2)    Count I: Contracts Clause**

The Court considers first the sufficiency of Gary Jet's claim for unconstitutional impairment of contract. Count I of Plaintiff's Complaint purports to assert a claim for impairment of the obligations of a contract, in violation of the Contracts Clause of the United States Constitution. (Compl., Count I, DE 1, ¶¶ 124–132.)

**(a)    Arguments**

Defendants Airport Authority and its board members[3] moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Mot. Dismiss, DE 18.) The Airport Authority argues, among other things, that Gary Jet has failed to state a claim for violation of the Contracts Clause of the United States Constitution. (*Id.* at 8–10.)

---

[3] For simplicity's sake, the Court will refer to Defendant Airport Authority and its board members collectively as "Airport Authority."

The Airport Authority cites *Horwitz-Matthews* for the proposition that not every breach of contract by a state or municipality is a violation of the Contracts Clause. (*Id.* at 8, citing *Horwitz-Matthews, Inc. v. City of Chi.*, 78 F.3d 1248 (7th Cir. 1996).)

The Airport Authority argues that Gary Jet's Complaint "is essentially based on its claim of an alleged breach of the 2014 Settlement Agreement." (Resp. to Mot. Prelim. Inj., DE 23 at 6.) The Airport Authority explains:

> Amending the Minimum Standards does not create any impairment to the contractual relationship between Gary Jet and the [Airport] Authority. Gary Jet has merely alleged a breach of the agreement with the Authority, which is not enough to constitute a constitutional impairment of the contractual relationship between Gary Jet and the Authority, according to the Court in *Council 31*. Gary Jet has not been deprived of the opportunity to seek damages for the alleged breach of contract.

(Mem. Supp. Mot. Dismiss, DE 19 at 9–10, referencing *Council 31 of the Am. Fed'n of State, County, and Mun. Employees v. Quinn*, 680 F.3d 875 (7th Cir. 2012).)

In response, Gary Jet acknowledges it has not asserted a claim that the Airport Authority breached the 2007 Lease. (Resp. to Mot. Dismiss, DE 34 at 10.) Rather, Gary Jet has asserted a claim that the Airport Authority breached the 2014 Settlement Agreement. (*Id.* at 10.) Also, Gary Jet claims the Airport Authority's New Minimum Standards unconstitutionally impair the 2007 Lease, not the 2014 Settlement Agreement. (*Id.* at 10.)

Gary Jet states it did not bring a claim for breach of the 2007 Lease because Gary Jet "believed that the [Airport] Authority would rely on its regulatory authority over Gary Jet Center to defeat such a claim." (*Id.* at 10.)

8

**(b)     Analysis**

The United States Constitution prohibits States from impairing the obligations of contracts: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1.

The Contracts Clause applies to states and their subdivisions, including the Airport Authority. *Horwitz-Matthews, Inc. v. City of Chi.*, 78 F.3d 1248, 1250 (7th Cir. 1996).

In *Horwitz-Matthews*, a developer sued the City of Chicago for impairment of the obligation of a contract between the developer and the city. *Id.* at 1249. Chicago prepared a plan for redevelopment of a particular parcel of land and solicited bids to purchase the parcel and follow the redevelopment plan. *Id.* Horwitz-Matthews submitted an offer. *Id.* The City Council enacted an ordinance in 1988 approving the sale and authorizing the mayor to execute a deed conveying the parcel. *Id.* But the parties did not yet execute a sales contract, as certain pre-conditions remained outstanding. *Id.* Finally, in 1994, the City Council passed an ordinance repealing the 1988 ordinance that had approved the developer's original offer. *Id.* at 1250.

Horwitz-Matthews sued the City of Chicago, claiming it had impaired the contractual obligation in violation of the Constitution, and claiming breach of contract based on state law. *Id.* at 1249.

The district court observed that not every breach of contract by a governmental entity by means of a legislative enactment gives rise to a claim under the Contracts Clause. *Horwitz-Matthews, Inc. v. City of Chi.*, 1995 WL 76889, at *3 (N.D. Ill. Feb. 21, 1995). Whether an action is a breach of a contract or an unconstitutional impairment of the obligation of a contract "'depends on the availability of a remedy in damages in response to the state's (or its

9

subdivision's) action.'" *Id.* at *3 (quoting *E&E Hauling, Inc. v. Forest Pres. Dist.*, 613 F.2d 675, 679 (7th Cir. 1980)).

The district court held that the later Ordinance did not stop Horwitz-Matthews from seeking damages as a remedy for Chicago's alleged breach of the agreement to sell the parcel. *Id.* at *4. Accordingly, Chicago did not impair an obligation of the contract and the court dismissed that claim. *Id.* Since that claim was the only basis for federal jurisdiction, the district court declined to exercise pendent jurisdiction over the breach of contract claim, and dismissed the case without prejudice. *Id.*

The Seventh Circuit affirmed. *Horwitz-Matthews, Inc. v. City of Chi.*, 78 F.3d 1248, 1252 (7th Cir. 1996). At the outset, the Court of Appeals noted that the district court made the dismissal of the constitutional claim without prejudice so that the plaintiff could reinstate the suit in federal court if "the disposition of the breach of contract claim by the state court showed that the City had impaired the obligation of its contract after all." *Id.* at 1249.

The Court of Appeals observed that a plaintiff has more difficulty stating a prima facie case of a Contracts-Clause violation regarding a public contract than he does stating a prima facie case of a Contracts-Clause violation regarding the wiping-out of a class of existing contracts:

> For when a state repudiates a contract to which it is a party it is doing nothing different from what a private party does when the party repudiates a contract; it is committing a breach of contract. It would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution.

*Id.* at 1250.

Citing Justice Oliver Wendell Holmes, the Court of Appeals noted that if the duty to pay damages for breach of contract is unimpaired, then "the obligation of the contract cannot be said to have been impaired." *Id.* at 1251.

The Court of Appeals held that the form of Chicago's withdrawal—the fact that the withdrawal happened through an ordinance—was immaterial: "Unless the form affects the promisee's remedy—unless the city council has been delegated authority by the state to modify the law of contracts, which is state rather than municipal law—there is no impairment of the obligation of the city's contracts." *Id.* at 1251. The mere fact that a municipality breaches a contract by passing an ordinance does not mean that the municipality has impaired the obligations of the contract.

In *Council 31*, the Seventh Circuit upheld another dismissal for failure to state a claim under the Contracts Clause. *Council 31 of the Am. Fed'n of State, County and Mun. Employees v. Quinn*, 680 F.3d 875 (7th Cir. 2012). There, the State of Illinois repudiated some of its agreements by instituting a pay freeze for certain government employees. *Id.* at 878. Council 31 sued, alleging that Illinois' actions violated the Contracts Clause. *Id.* The district court dismissed the Contracts-Clause claim. *Id.*

The Court of Appeals set out the standard for Contracts-Clause claims:

> To succeed on a Contracts-Clause claim, a plaintiff must demonstrate that a change in state law has operated as a substantial impairment of a contractual relationship. This inquiry requires the plaintiff to show (1) that there is a contractual relationship, (2) that a change in law has impaired that relationship, and (3) that the impairment is substantial.

*Id.* at 885 (internal quotation marks and citations omitted).

The Court of Appeals cited its decision in *Horwitz-Matthews* for the proposition that a breach of contract alone is not enough to constitute a constitutional impairment of a contractual

11

obligation. *Id.* at 885 (citing *Horwitz-Matthews*, 78 F.3d at 1250). A breach of contract triggers a duty to pay damages; if the duty to pay damages is unimpaired, then the obligation of the contract is unimpaired. *Id.* (citing *Horwitz-Matthews*, 78 F.3d at 1251). Accordingly, the Court of Appeals focused on whether the defendant governmental entity had set up a defense that prevented the plaintiff from obtaining damages, or some equivalent remedy, for the alleged breach of contract. *Id.* (citing *Horwitz-Matthews*, 78 F.3d at 1251).

The Court of Appeals observed that Council 31 had already prevailed at arbitration on its breach-of-contract claim, and that in the subsequent suit filed by Illinois in state court to vacate the arbitration award, Illinois did not raise a defense based on the particular governmental action that Council 31 claimed violated the Contracts Clause. *Id.* at 886. The Court of Appeals concluded that Council 31 had failed to state a claim for violation of the Contracts Clause. *Id.*

In the instant case, Gary Jet's claim for violation of the Contracts Clause has not yet crossed the line from speculative to plausible, as required to survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 570.

A municipal entity does not violate the Contracts Clause every time it breaches one of its own contracts. *Horwitz-Matthews*, 78 F.3d at 1250. If the municipal entity has not impaired its obligation to answer to the plaintiff for breach of contract, then the municipal entity has not unconstitutionally impaired the obligation of the contract. *Council 31*, 680 F.3d at 885 (citing *Horwitz-Matthews*, 78 F.3d at 1251). For Gary Jet to have a claim against the Airport Authority for violation of the Contracts Clause with respect to the 2007 Lease, the Airport Authority must have taken an unconstitutional action to wipe out Gary Jet's remedy for breach of contract.

Gary Jet claims the Airport Authority unconstitutionally impaired the obligations of only one contract: the 2007 Lease. Yet Gary Jet has not brought a claim in this suit for breach of the

12

2007 Lease. And the Airport Authority has not had occasion to answer or raise any defenses to such a claim.

At this point, the parties and the Court can only speculate as to the potential merits of a claim for breach of the 2007 Lease, the nature of the defenses the Airport Authority would raise to such a claim, and whether the Airport Authority would raise a defense that worked an unconstitutional impairment of the obligations of the 2007 Lease by eliminating a remedy for breach of contract.

Gary Jet argues that it did not bring a claim for breach of the 2007 Lease because it anticipated the Airport Authority would rely on its regulatory authority over Gary Jet to defeat such a claim. (Resp. to Mot. Dismiss, DE 34 at 10.) Gary Jet argues it anticipated the Airport Authority would argue that the Authority's New Minimum Standards mandating fuel farm maintenance, a higher rental rate, and the 1.5% charge did not breach the 2007 Lease because Gary Jet agreed in the 2014 Lease Amendment to be subject to any amendments to the Minimum Standards regardless of whether those amendments contradict terms in the 2007 Lease. (*Id.* at 10–11.) These two arguments do not necessarily amount to the same thing: the former might raise a constitutional problem, the latter does not. If the Airport Authority's defense to a claim for breach of the 2007 Lease would be that Gary Jet agreed in the 2014 Settlement Agreement that the Airport Authority could make changes to the Minimum Standards and that these would control over the 2007 Lease, then that case would be essentially a simple breach-of-contract case, and would not implicate the Constitution's Contracts Clause.

In any event, counsel for the Airport Authority made several concessions at the hearing regarding the Motion to Dismiss which should, arguably, assuage Gary Jet's concerns regarding

the Contracts Clause, and which, at least, demonstrate the speculative nature of the Contracts-Clause claim at this point.

Gary Jet purports to bring a claim for impairment of the 2007 Lease in violation of the Contracts Clause. To survive a Motion to Dismiss under Rule 12(b)(6), Gary Jet must essentially claim that governmental action has unconstitutionally prevented Gary Jet from having a remedy for breach of contract, and this claim must be plausible. But Gary Jet has not raised this claim to the level of plausibility. Gary Jet has not tested whether a claim for breach of the 2007 Lease would provide an adequate remedy, or what defenses the Airport Authority might raise. The claim is not yet plausible. If it turns out in further state-court proceedings that the Airport Authority has unconstitutionally impaired the 2007 Lease, then Gary Jet might have a plausible Contracts-Clause claim. However, as Judge Posner noted in *Horwitz-Matthews*, "If not, not." *Horwitz-Matthews*, 78 F.3d at 1252.

**C.     Conclusion**

As Gary Jet's Contracts-Clause claim does not rise above the line between speculative and plausible, the Court dismisses Count I for failure to state a claim, without prejudice. Since Count I was the only independent basis for federal jurisdiction, the Court is inclined to decline the exercise of supplemental jurisdiction regarding the remaining counts.

However, the Court will withhold ruling on this issue as requested by Gary Jet. Rather, the Court will give the parties an opportunity to brief the issue of supplemental federal jurisdiction. Gary Jet may file such a brief by December 28, 2015. Defendants may then respond by January 7, 2016.

**SO ORDERED** on December 18, 2015.

                                                  s/ Joseph S. Van Bokkelen
                                                  JOSEPH S. VAN BOKKELEN
                                                  UNITED STATES DISTRICT JUDGE